**IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| SCOTT AND ANDREA MAINS, | : | |
| | : | |
| Plaintiffs, | : | Civil Action No. 5:20-cv-00112-EGS |
| | : | |
| v. | : | |
| | : | **JURY TRIAL DEMANDED** |
| THE SHERWIN-WILLIAMS COMPANY, | : | **(12 JURORS)** |
| doing business as The Thompson's Company, | : | |
| | : | |
| Defendant. | : | |

**MEMORANDUM OF LAW IN SUPPORT OF THE SHERWIN WILLIAMS
COMPANY'S MOTION FOR SANCTIONS FOR VIOLATION OF THE
COURT'S CONFIDENTIALITY AND PROTECTIVE ORDER**

**GORDON REES SCULLY
MANSUKHANI, LLP**
C. Tyler Havey (No. 80877)
Ann Thornton Field (No. 52130)
Eric C. Rosenberg (No. 317144)
Three Logan Square
1717 Arch Street, Suite 610
Philadelphia, PA 19103
Phone: (215) 717-4005
Emails:        afield@grsm.com
                 thavey@grsm.com
                 erosenberg@grsm.com

*Counsel for Defendant The Sherwin-
Williams Company, doing business as The
Thompson's Company*

## I.      <u>INTRODUCTION</u>

The Sherwin-Williams Company is a global leader in the highly competitive paints and coatings industries.  For nearly 156 years, Sherwin-Williams has been at the vanguard of innovations in its field, and its name and brands are immediately recognizable throughout the world.  In addition to its customer service, Sherwin-Williams' success is the result of years of research and development embodied in its proprietary product formulations, which Sherwin-Williams guards jealously.

Paint and coating manufacturers, however, are often the target of products liability lawsuits like this one, and the industry as a whole monitors those lawsuits as part of their day-to-day operations.  Sherwin-Williams is keenly aware that its competitors are watching these actions closely.  Therefore, Sherwin-Williams vigorously resists run of the mill discovery seeking the disclosure of confidential and proprietary product-related information, and insists on prophylactic measures like protective orders and confidentiality agreements to keep its sensitive and valuable trade secrets secure from competitors.

Of course, nobody will safeguard the confidentiality of Sherwin-Williams' valuable formulations to the same degree and with the same zeal as it does.  And once sensitive information is produced in discovery, Sherwin-Williams no longer has any control over how or where it is stored, who will have access to it, or with whom it will be shared.  But if a protective order is in place, Sherwin-Williams has every reason to expect that its adversary will abide by it as it would any other court order, and will exercise absolute vigilance and diligence to ensure confidential information is not disclosed outside the narrow group of individuals allowed by the order.

Plaintiffs and their counsel failed miserably to meet that expectation here.  Sherwin-Williams's greatest fear in disclosing its confidential product formulas became a reality when Plaintiffs, the insurance company for which they are acting as a front, and their counsel published

2

Sherwin-Williams' "secret sauce" for the world—including all of Sherwin-Williams' competitors—to see, putting Sherwin-Williams' business in jeopardy.

The gravity of Plaintiffs and their attorneys' infraction cannot be overstated. "Sherwin-Williams" is a household name and a highly regarded global leader in the hugely competitive paint and coatings markets. The confidential, proprietary, trade secret product formula Plaintiffs chose to publish for the world to see happens to be *the* formula for a "bread and butter" brand and product line that dominates in its particular market segment, and generates substantial annual revenue. And to make matters worse, Plaintiffs and their attorneys were repeat offenders, having engaged in a similar violation (albeit limited to a couple of ingredients) less than two months earlier. Sherwin-Williams brought that first violation to opposing counsel's attention, and allowed them to correct the situation without further consequence, expecting Plaintiffs and their lawyers had learned their lesson. They did not. Instead, they doubled down and put the entire formula online.

Whether their actions were willful or simply negligent is immaterial. Plaintiffs and their counsel have repeatedly ignored this Court's orders, are in contempt, and have caused Sherwin-Williams real harm. As shown below, sanctions should follow.

## II.     FACTUAL AND PROCEDURAL BACKGROUND

This subrogation lawsuit arises from a fire that occurred on June 8, 2019 at Plaintiffs' home in Easton, Pennsylvania. Nonparty State Farm insured the property at the time of the fire, and compensated Plaintiffs for their loss pursuant to an insurance contract between them. State Farm then authorized Plaintiffs to file this lawsuit against Sherwin-Williams on its behalf to recover the insurance payout. [Ratification Affidavit, ECF No. 8].

In their operative Amended Complaint [ECF No. 36], Plaintiffs allege that the fire occurred when "materials containing and/or saturated" with a Sherwin-Williams product known as "Thompson's WaterSeal Penetrating Timber Oil" spontaneously combusted after being left on

"the lawn next to the deck," causing "damage to Plaintiffs' real and personal property." *Id.* at ¶¶ 5-10. Plaintiffs seek to recover the cost of "damage to their property and…additional expenses" allegedly caused by the fire. *Id.* at ¶¶ 23, 31 and 41.

From the outset, the parties acknowledged that this case would implicate Sherwin-Williams' confidential trade secrets and other proprietary information that warranted protection from public disclosure during the course of discovery. [Joint Rule 26(f) Report, ECF No. 10]. This Court agreed [Memorandum Opinion granting Sherwin-Williams' Motion for a Protective Order, ECF No. 25], and on April 7, 2021, entered a Confidentiality and Protective Order ("Protective Order") [ECF No. 27] which was intended to shield Sherwin-Williams' proprietary information designated as "confidential" from improper dissemination, including on the public record.

Notwithstanding the Protective Order, on November 18, 2021, Plaintiffs and their counsel identified by name and placed in the public record certain Sherwin-Williams confidential product composition information regarding raw materials that is not otherwise available in the public domain, which Plaintiffs gleaned from formulas disclosed by Sherwin-Williams as "confidential" in the course of discovery. [Affidavit of Kenneth T. Levine, Esq., ECF No. 38]. Sherwin-Williams alerted Plaintiffs, their counsel, and the Court of this first violation, which Plaintiffs attempted to remedy by filing a praecipe to remove the information from the docket on December 7, 2021 [ECF No. 42]. That disclosure remained in the public record until December 27, 2021. [Order Granting Plaintiffs' Praecipe to Withdraw, ECF No. 47].

Exactly one month later, on January 27, 2022, Plaintiffs and their counsel once again placed information marked "confidential" under the Protective Order on the public docket. This time, however, *what Plaintiffs and their counsel published was the entire formula for the product at*

4

*issue*, making it available for the world (including any Sherwin-Williams competitors following this case) to see.  [Exhibit C to Plaintiffs' Motion to Compel, ECF No. 53-5].  Sherwin-Williams then sought the Court's involvement.  [February 2, 2022 Letter from C. Tyler Havey, ECF No. 57].  After a February 8, 2022 Status Conference, this motion followed.

III.   **ARGUMENT**

   A.   **Legal Standards.**

This Court has the "inherent power to enforce compliance with [its] lawful orders through civil contempt." *Spallone v. United States,* 493 U.S. 265, 276 (1990) (quoting *Shillitani v. United States,* 384, U.S. 364, 370 (1996)).

To hold a party in civil contempt, the aggrieved party must establish, by clear and convincing evidence, that (1) a valid court order existed, (2) the party had knowledge of the order, and (3) the party disobeyed the order.  *John T. ex. rel. Paul T. v. Del. Cty. Intermediate Unit,* 318 F.3d 545, 552 (3d Cir. 2003) (quoting *Harris v. City of Phila.,* 47 F.3d 1311, 1326 (3d Cir. 1995)); *see also Lawn Doctor, Inc. v. Rizzo,* 646 F. App'x 195, 199 n.4 (3d Cir. 2016); *Robin Woods Inc. v. Woods,* 28 F.3d 396, 399 (3d Cir. 1994).  The contempt need not be willful to be sanctionable. Indeed, even "good faith is not a defense to civil contempt."  *Robin Woods Inc.,* 28 F.3d at 399.

The underlying purpose of civil contempt sanctions is twofold: (1) "to coerce the defendant into compliance with the court's order," and (2) "to compensate for losses sustained by the disobedience." *Robin Woods Inc.,* 28 F.3d at 400.  The district court has "wide discretion in fashioning a remedy." *Robin Woods, Inc.,* 28 F. 3d at 399 (quoting *Delaware Valley Citizens' Council v. Pennsylvania,* 678 F.2d 470, 478 (3d Cir. 1982)).

In considering the imposition of a just sanction, the Court's discretion is limited in only two ways: (1) any sanction must be just; and (2) the sanction must be related to the claim that was at issue.  *See Clientron Corp. v. Devon IT, Inc.*, 894 F.3d 568, 580 (3d Cir. 2018); *Klein v. Stahl*

5

*GMBH*, 185 F.3d 110-11 (3d Cir. 1999) (the court "must ensure that the sanction is tailored to meet the harm identified."). Sanctions, however, should include an award that "seeks to make reparation to the injured party and restore the parties to the position they would have held had the injunction been obeyed." *Lawn Doctor, Inc.,* 646 F. App'x at 200 (internal quotation marks omitted). The compensatory award should therefore be commensurate with "the actual loss suffered by the party that was wronged." *Elkin v. Fauver,* 969 F.2d 48, 52 (3d Cir. 1992)).

**B.      Sherwin-Williams Has Established Plaintiff's and Their Counsel's Contempt.**

Plaintiffs and their counsel's contempt is a matter of public record. First, the existence of the Protective Order is beyond dispute, and its terms are clear and precise. [ECF No. 27]. Second, to the extent it requires further proof at all, Sherwin-Williams raised the Protective Order with the Plaintiffs and their counsel just weeks prior to their most recent violation—the first time they placed Defendant's confidential information on the public docket. Plaintiffs and their counsel were therefore fully aware of the Protective Order, and were on notice of a previous violation. [ECF No. 41]. Third, and finally, Plaintiffs and their counsel concede that their January 27, 2022 filing violates the Protective Order. [ECF No. 59]. Thus, Sherwin-Williams has carried its burden to prove contempt by clear and convincing evidence.

**C.      Plaintiffs and Their Counsel's Contemptuous Disclosure of Sherwin-Williams' Trade Secrets Was a Material Violation of the Protective Order Because It Compromises Sherwin-Williams' Business, as Well as Its Ability to Litigate on a Level Playing Field.**

The adequate protection of trade secrets transcends purely private business interests. Indeed, public policy undergirds the protection of trade secrets because they lie at the heart of invention, innovation, and technological advancement. *See Kewanee Oil Co. v. Bicron Corp.,* 416 U.S. 470, 481 (1974) ("The maintenance of standards of commercial ethics and the encouragement of invention are the broadly stated policies behind trade secret law."); *Rockwell Graphic Systems,*

*Inc. v. DEV Industries, Inc.,* 925 F.2d 174, 180 (7th Cir.1991) ("trade secret protection is an important part of intellectual property, a form of property that is of growing importance to the competitiveness of American industry.").  Courts therefore have a responsibility to ensure that disclosure of trade secrets for purposes of litigation does not "become by indirection the means of ruining an honest and profitable enterprise." *Coca–Cola Bottling Co. of Shreveport, Inc. v. Coca— Cola Co.,* 107 F.R.D. 288, 290 (D. Del. 1985) (quoting 8 J. Wigmore, Evidence § 2212, at 155 (McNaughton rev. ed. 1961)).

Protective orders thus play a particularly vital role in the fair and efficient litigation of disputes involving sensitive and confidential commercial trade secrets—such as Sherwin-Williams' product formulations—because their very value depends entirely upon their continued secrecy.  Without effective protective orders to safeguard the confidentiality of trade secrets and other sensitive commercial information, companies involved in litigation, like Sherwin-Williams here and now, face a Hobson's choice.  They can either exercise their right to defend themselves— thereby destroying their trade secrets through disclosure to competitors and the public alike—or forego their fundamental right to a defense to keep their trade secrets (and their commercial viability) alive.

Because of the important interests at stake, litigating parties must respect protective orders, as they would any other court order.  Carelessness in complying with protective orders, or their willful disregard, impairs their usefulness and interferes with the ability of courts to manage the litigation effectively—and poses an existential threat to the owner of those trade secrets.  *Beam System, Inc. v. Checkpoint Systems, Inc.*, No. 95-4068, 1997 WL 364081 at *2 (C.D. Cal. Feb. 6, 1997).  Defendants and their counsel's careless contempt turned that threat into reality.

**D.      Plaintiffs and Their Counsel's Contempt Merits Severe Sanctions.**

With their contempt established as a matter of record, and the resulting injury to Sherwin-Williams laid bare, the only real question is what sanctions are appropriate to remedy the harm Plaintiffs and their counsel inflicted on Sherwin-Williams by disclosing its secret formulation to the world.  On this score, the Court has broad discretion. *John T.,* 318 F.3d at 554.  Several options fit the bill.

For starters, Plaintiffs and their counsel must reimburse Sherwin-Williams' fees and costs associated with bringing this matter to the Court's attention.  *See Robin Woods*, 28 F.3d at 400 ("the cost of bringing the violation to the attention of the court is part of the damages suffered by the prevailing party and those costs would reduce any benefits gained … from the court's violated order.").

Additionally, and more importantly, Plaintiffs and their counsel should also compensate Sherwin-Williams for the competitive harm they have inflicted by violating the Protective Order. *See*, e.g., *Marhak v. Treadwell*, 595 F.3d 478 (3d Cir. 2009) (defendant was entitled to all the damages available to it under the law as a result of plaintiff's violation of a court order protecting intellectual property).  Unfortunately, given the nature and forum of the contemptuous disclosure, it may ultimately prove impossible to ascertain with absolute certainty who actually accessed Sherwin-Williams' proprietary formulation while it was available for the entire world to see, and whether any competitor used it—or intends to use it—to replicate Sherwin Williams' proprietary product.

Sherwin-Williams does not have access to the ECF records, and even if it did, that information alone is insufficient to ascertain the ultimate identity of those who may have gained access to Sherwin-Williams' formula while Plaintiffs and their counsel's improper disclosure remained available for the world to see.  Indeed, even if the Court directed ECF to make such

8

disclosure, all anyone would be able to determine is the identity of the individual ECF users who had access to the relevant documents.  But ECF would have no ability to identify the persons or entities to whom those ECF users may have ultimately conveyed Sherwin-Williams' proprietary formula, and those users may be beyond the jurisdiction of this Court.  Left to its own devices, Sherwin-Williams would have to expend substantial time and resources to figure out whether its proprietary formula has been misappropriated and misused.  This will require Sherwin-Williams to reverse-engineer every one of its competitors' products for an indefinite period to ascertain whether its proprietary formula has lost its inherent value.  Suffice it to say, however, that even if Plaintiffs and their counsel's disclosure resulted in a fraction of a percentage point loss in sales, that loss alone would exceed the value of this subrogation case.[1]  Plaintiffs and their counsel have seriously jeopardized Sherwin-Williams' business.  *Cf. Oakwood Lab'ys LLC v. Thanoo*, 999 F.3d 892, 913 (3d Cir. 2021) (citation omitted) ("After all, what value does a trade secret hold when it's no longer a secret from the trade?").  This Court is therefore justified in issuing monetary sanctions equivalent to a reasonable loss in sales.

Additionally and/or alternatively, because the harm Plaintiffs and their counsel have inflicted on Sherwin-Williams through their contempt exceeds the total value of this case, terminating sanctions and dismissal of this lawsuit is warranted.  *Cf.* Fed. R. Civ. P. 37 ("the court where the action is pending may issue further just orders…dismissing the action or proceeding in whole or in part."); *Knoll v. City of Allentown,* 707 F.3d 406, 409 (3d Cir. 2013) ("the Federal Rules of Civil Procedure and a court's inherent authority to control its docket empower a district

---

[1]     Sherwin-Williams' sales figures are also confidential and highly sensitive.  And given Plaintiffs' and their attorney's track record, offering further details here poses a great risk to Sherwin-William.  However, Sherwin-Williams is prepared to offer sufficient evidence to the Court, *in camera*, to establish the degree of potential commercial injury they have caused.  There is no question that Plaintiffs' insurer—the real party in interest here—has more than enough funds to cover remedial sanctions.

court to dismiss a case as a sanction for failure to follow procedural rules or court orders.").

Even if the Court were reluctant to dismiss the case, Plaintiffs and their counsel have now proven themselves repeatedly unable to abide by the Protective Order and maintain Sherwin-Williams' proprietary trade secrets—the backbone of Sherwin-Williams' business—in confidence. Accordingly, at the very least, they should be ordered to return or destroy that information immediately, discovery on product composition should be closed, and Plaintiffs should be barred from relying on Sherwin-Williams' formulation for any purpose in this case.

The Court should also require Plaintiffs and their counsel to account for the manner in which they have handled Sherwin-Williams' confidential information outside of their contemptuous filings in the public record. Plaintiffs and their counsel should be ordered to advise the Court (initially, *in camera*) of the identity of the persons and entities to whom they have disclosed that information, and what steps they have taken to ensure that those recipients of confidential information are (a) fully aware of the Protective Order, and (b) complying with its terms.[2]

Finally, in the event the Court exercises its discretion to not terminate this case now, it should issue a clear warning to the Plaintiffs and their counsel that any further violation of the Protective Order will result in a dismissal with prejudice.

---

[2]     Sherwin-Williams requests that any such order require Plaintiffs and their counsel to, at a minimum, provide this Court, *in camera*, a report of the relevant policies, procedures, and technological measures in place to identify and track any inadvertent disclosure of Sherwin-Williams' confidential information, and ensure that disclosure is consistent with the Protective Order. Furthermore, Plaintiffs, their insurer and their counsel should all be required to offer adequate assurances that any confidential information Sherwin-Williams disclosed here is not available for use in any future dispute or litigation.

**IV.     CONCLUSION**

Plaintiffs and their counsel have repeatedly violated this Court's Protective Order, and in doing so have exposed Defendant The Sherwin-Williams Company to an immeasurable risk of harm. They should be held in contempt, sanctioned appropriately, and their entire case dismissed with prejudice. At the very least, they should be required to account for their handling of Sherwin-Williams' confidential information, barred from asserting any claim based on Sherwin-Williams' proprietary product formulation, and ordered to return or destroy every single confidential document produced in discovery that identifies the composition of that product. Finally, Plaintiffs and their counsel should be ordered to reimburse Sherwin-Williams in full for the fees and costs incurred in bringing this matter to the Court.

Dated: February 23, 2022.

Respectfully submitted,

**GORDON REES
SCULLY MANSUKHANI, LLP**

By:     */s/ C. Tyler Havey*
Ann Thornton Field (No. 52130)
C. Tyler Havey (No. 80877)
Eric C. Rosenberg (No. 317144)
Three Logan Square
1717 Arch Street, Suite 610
Philadelphia, PA 19103
Phone:          (215) 717-4002
Emails:          afield@grsm.com
                     thavey@grsm.com
                     erosenberg@grsm.com

*Counsel for Defendant The Sherwin-Williams
Company, doing business as The Thompson's
Company*