IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

SCOTT AND ANDREA MAINS,
          Plaintiffs

   v.

THE SHERWIN-WILLIAMS COMPANY,
          Defendant

Case No.  5:20-cv-00112-JMG

## PLAINTIFFS' RESPONSE IN OPPOSITION TO DEFENDANT'S MOTION FOR SANCTIONS

Plaintiffs, by and through their attorney, hereby respond to Defendant's Motion for Sanctions, and respectfully request that this Honorable Court enter an Order denying said motion.

For the reasons expressed in the attached Memorandum of Law and accompanying supports, this Honorable Court should deny the sanctions demanded by Defendant.

**WHEREFORE**, Plaintiffs respectfully request that this Honorable Court deny Defendant's Motion for Sanctions and enter instead the proposed Order attached hereto.

**Dated:**   March 10, 2022      **BY:**

Kenneth T. Levine (No. 60984)
**de Luca Levine LLC**
Three Valley Square, Suite 220
Blue Bell, PA 19422
Phone:  (215) 383-0081
Fax:  (215) 383-0082 (fax)
klevine@delucalevine.com

*Attorneys for Plaintiffs*

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **SCOTT AND ANDREA MAINS,**<br>　　　　　**Plaintiffs**<br>　　**v.**<br><br>**THE SHERWIN-WILLIAMS COMPANY**,<br>　　　　　**Defendant** | **Case No.  5:20-cv-00112-JMG**<br><br>**JURY TRIAL DEMANDED** |

**MEMORANDUM OF LAW IN SUPPORT OF
PLAINTIFFS' RESPONSE TO DEFENDANT'S MOTION
TO ENTER CONFIDENTIALITY AND PROTECTIVE ORDER**

Plaintiffs, by and through its attorneys, hereby files this Memorandum of Law in Support

of Response to Defendant's Motion for Sanctions.

## I.　　INTRODUCTION

As discussed with the court in its recent conference, Plaintiffs' counsel regrets that the

events leading up to this motion occurred, and that this motion for sanctions has resulted.

Undersigned Plaintiffs' counsel was responsible for these events, although the attachment of two

identical pages of Composition Data Sheets that were marked Confidential (as pages 23 and 24

at the end of an exhibit to a well-founded Motion to Compel) was accidental and unknown until

brought to Plaintiff's counsel's attention shortly after the filing.

Defendant has nonetheless filed a motion requesting that this Court enter broad and

unjustified sanctions against Plaintiffs.  In furtherance of such overzealous motion, Defendant

has asserted a broad series of unsupported averments in an effort to demonstrate to the court the

purported magnitude of the incident:

-　　　　"For nearly 156 years, Sherwin-Williams has been at the vanguard of

innovations in its field, and its name and brands are immediately recognizable throughout the world."

- "the industry as a whole monitors those lawsuits as part of their day-to-day Operations."

- "counsel published Sherwin-Williams' 'secret sauce' for the world - including all of Sherwin-Williams' competitors—to see, putting Sherwin-Williams' business in jeopardy."

- "The confidential, proprietary, trade secret product formula Plaintiffs chose to publish for the world to see happens to be the formula for a "bread and butter" brand and product line that dominates in its particular market segment."

- "Plaintiffs and their counsel have seriously jeopardized Sherwin-Williams' business."

- "the harm Plaintiffs and their counsel have inflicted on Sherwin-Williams through their contempt exceeds the total value of this case."

While Plaintiffs' counsel truly regrets the events that led to this motion, there is no basis provided to justify any of the above hyperbole.

As noted in the attached affidavit from Plaintiffs' expert, Jennifer Morningstar, P.E. (attached hereto as Exhibit "A"), approximately 90% of the composition of the subject product was disclosed by Defendant in its publicly available safety data sheet disclosures, and with greater specificity as to components and greater specificity as to quantities.  Moreover, all oil-based deck stains consist of the same principal component parts: hydrocarbons, drying oils, drying agents, tints or color pigments. Defendant had publicly disclosed these components in greater detail on its own safety data sheets, as demonstrated in the attached Morningstar Affidavit.  The pages filed with the court did not contain specific identifiers of the components or precise amounts.

Along similar lines, to the extent any "competitor" actually wanted to determine the subject product's composition, they could reverse engineer it by reviewing the subject product in a lab.  "Product deformulation analysis," also known as "chemical reverse engineering," is the process of analytically breaking down a product's formulation to separate and determine the specific identity and exact quantity of both its major and minor constituent components. As

noted by Ms. Morningstar, there is an entire market of labs that perform such functions, and with Defendant providing 90% of its detailed formula already in public disclosures, it would be a relatively easy task.

Defendant expresses the possibility (or likelihood, depending on the section of its motion) of a great loss of profits from the Composition Data Sheet being included at the end of an Exhibit to Plaintiffs' motion to compel.  It failed in any way, though, to attempt to justify how this ever would happen even if a major competitor (or a new competitor) gained access to the Composition Data Sheet and was able to replicate the formula from such paper (despite its above noted limitations).   In light of the marketing landscape, it is completely unclear how Defendant would ever lose any profits if the composition of the subject product was in fact a secret, and was obtained by a competitor.

None of this takes away from the admission by undersigned counsel that he is responsible for this inadvertent attachment being filed, and that such actions or omissions are regrettable. This merely addresses some of the unsupported hyperbole as to what actually happened here and what is truly appropriate to consider as a recourse, if any.

Additional points to be noted are that Defendant's requested sanctions are all directed against Plaintiffs, who are wholly innocent, and had nothing to do with these events.  To the extent that any additional requirements or sanctions must be meted out they should only be entered against undersigned counsel and his law firm, and not the innocent clients.

In that regard, and in light of the circumstances, Plaintiffs' counsel is agreeable to all of the following steps to both clarify what has occurred in the past and what will happen in the future:

- Undersigned counsel has issued a sworn statement under oath as to the prior handling of the two pages marked confidential, as well as steps undertaken in this particular case to ensure that such confidential material is not improperly disclosed in the future (See Exhibit "B," attached hereto);

- Counsel's office is willing to agree to provide all future court filings to Defendant's counsel a day before such papers are filed to ensure that no future violation occurs; and

- Counsel's office is willing to put in place any other reasonable measures that the Defendant would suggest, or that the court would find, to provide additional comfort to the Defendant as to the handling of its confidential documents.

The pending motion for sanctions overstates the nature of the circumstances and seeks disproportionate sanctions against Plaintiffs.  While Plaintiff's counsel regrets the inadvertent filing of a confidential document, neither the actual conduct of counsel and his office, nor the demonstrated actual effect of same, justify the overly aggressive demand for sanctions against Plaintiffs.

For the reasons noted below, this Honorable Court should deny Defendant's Motion for Sanctions as requested.


II.     **ADDITIONAL BACKGROUND**

A.     **Improper Filing**

Plaintiffs' counsel's office wrongly included two pages marked "confidential" that contained identical Composition Data Sheets of Defendant's product marketed as "Thompson's WaterSeal Penetrating Timber Oil" at the end of an exhibit to Plaintiffs' earlier motion. This was accidental and unintentional. They were included by litigation paralegal, Scott Branson, and

unfortunately undersigned counsel did not see that he had included these two pages at the end of the exhibit. Mr. Branson has previously provided an affidavit for the court, attached again here as Exhibit "C."

When this improper disclosure was brought to our attention by defense counsel – about 30 minutes after the filing of the motion, we immediately contacted the court clerk's office, and then your chambers, to correct this error. I apologized to defense counsel and advised that we would immediately rectify the situation. We continued to follow-up with the clerk's office and court chambers until the issue was resolved shortly thereafter.

### B.      Substance of Improperly Filed Document

The document was marked "confidential" and should not have been publicly filed.  The substance and importance of such document is believed to be greatly overstated by defendant in its motion.

Approximately 90% of the composition of the subject product was disclosed by Defendant in its publicly available safety data sheet and related disclosures, and with greater specificity as to components and greater specificity as to quantities.  Moreover, all oil-based deck stains consist of the same principal component parts: hydrocarbons, drying oils, drying agents, tints or color pigments. Defendant had publicly disclosed these components in greater detail on its own safety data sheets, as demonstrated in the attached Morningstar Affidavit.   The pages filed with the court did not contain specific identifiers of the components (known as CAS Numbers) or precise amounts of such components.

As noted in the affidavit, due to the wide use in other exterior wood stains of such components that were not already publicly disclosed, and the generic names used on the filed

document, any outside observer (if there had been one) would not have obtained any valuable

information that such observer would not have assumed as to the product's components

generally.  Ms. Morningstar references as an example the fact that no one would be surprised to

see that a component sheet for Sherwin Williams blue paint be a compound generically called

"blue dye."  Without the precise CAS number of such dye and without the precise amount of

such component, very little would be revealed.[1]

Similarly, it should be noted by the court that one demand made by Plaintiffs in their

Motion to Compel which led to this improper filing was for the specific CAS numbers for the

product's components provided because without such information Plaintiffs and their experts

remained uncertain as to the actual components.  Another example that demonstrates the actual

limitations of the information on the improperly filed material can be seen by the publicly

disclosed component: "paraffin wax," one of the hydrocarbon bases for the product.  Without the

CAS Number for that component, it could have been any of five separate substances that use that

name when listing components: (1) paraffin wax, petroleum, clay treated (CAS No. 064742-43-

4); (2) paraffin wax, petroleum hydro-treated (CAS No. 064742-51-4); (3) chlorinated paraffin

wax (CAS No. 063449-39-8); (4) microcrystalline wax (CAS No. 063231-60-7); or (5) paraffin

(CAS No. 008002-74-2).[2]  Based upon the publicly disclosed Safety Data Sheets (SDSs), we

know that it was actually the fifth component called simply "paraffin" with CAS No. 008002-74-

---

[1]   In fact, the confidential Composition Data Sheet included components for pigment as all such products have.  Such pigment used only generic terms and they are actually repeated proudly as components on the Thompson's WaterSeal Penetrating Deck Oil Webpage: "Premium iron oxide pigments offer long-lasting beautiful colors …." (www.thompsonswaterseal.com/penetrating-decking-oil/decking-oil ).  There is more description offered in that sentence than on the confidential document.

[2]   This is observable by the court itself by simply inputting the phrase "paraffin wax" into the search bar at https://www.whatsinproducts.com/pages/database_search.

2.  Without this public disclosure by Defendant, though, anyone simply reading "paraffin wax" on a list of components would not know which of these components was actually included.

The real effect of this improper filing, to the extent any "competitor" actually wanted to determine the subject product's composition, must also take into consideration other methodology presently available to do so.  A competitor could reverse engineer this product's composition by reviewing the subject product in a lab.  "Product deformulation analysis," also known as "chemical reverse engineering," is the process of analytically breaking down a product's formulation to separate and determine the specific identity and exact quantity of both its major and minor constituent components. As noted by Ms. Morningstar, there is an entire market of labs that perform such functions, and with Defendant providing 90% of its detailed formula already in public disclosures, it would be a relatively easy task.

Overall, Plaintiffs respectfully request that this Honorable Court maintain a realistic view of the actual impact that the improperly filed document would have if ever actually viewed by a competitor, based upon Defendant's own redactions of CAS numbers from the confidential documents; and based on the generic and broad names of the components that were not publicly disclosed but would be expected to be a component of the subject product; and based upon on the imprecise amounts or ranges provided; and based upon the fact that 90% of the product was already publicly disclosed; and based upon the other means already available to a competitor to reverse engineer the product's components.

None of this is to take away from the impropriety of the filing.  It is intended to address the hyperboles asserted by Defendant as to the effect of such filing.

C.      **Prior Incident**

Defendant fairly notes that this incident is not the first time that undersigned counsel's office made a disclosure mistake in this case.  To be clear and precise, though, in an affidavit of November 18, 2021, in paragraph 7(c), second sentence, two components of the subject product were identified by name. One was Linseed Oil, which was publicly disclosed in a Sherwin Williams SDS obtained online.[3]  The remaining component listed there had not been publicly disclosed in SDSs or environmental data sheets. We immediately took steps when this oversight was brought to our attention to remedy the issue.

Both incidents were undersigned counsel's responsibility. As to the earlier issue, because so many of the material components of Defendant's product had been publicly available on SDSs (all of the hydrocarbons, and the metallic drying agents), undersigned counsel accidentally overlooked that one component mentioned in the sentence was in fact only disclosed on the "confidential" sheet.  It identified a component by its generic name, and not its CAS number; and such component is a type of substance found in all oil-based exterior stains.

Undersigned counsel is fully responsible for both of these errors, but they must be placed in their proper context.  Undersigned counsel has been practicing product liability litigation for over 30 years, and have never previously had a single problem or misstep with this common and incredibly important issue of manufacturer discovery confidentiality. My office is very sensitive to the issue, and will ensure that this will never happen again; and certainly not in this litigation.

---

[3] https://images.homedepot-static.com/catalog/pdfImages/02/02b9660d-68f3-4058-901b-807e1656f6db.pdf.

**D.     Monetary or Other Effect of this Incident**

Defendant expresses the possibility (or likelihood, depending on the section of its motion) of a great loss of profits from the Composition Data Sheet being included at the end of an Exhibit to Plaintiffs' motion to compel: "Plaintiffs and their counsel have seriously jeopardized Sherwin-Williams' business" and "the harm Plaintiffs and their counsel have inflicted on Sherwin-Williams through their contempt exceeds the total value of this case."

Defendant failed in any way, though, to attempt to justify how this ever would happen even if a major competitor (or a new competitor) gained access to the Composition Data Sheet and was able to replicate the formula from such paper (despite all of the above limitations).   In light of the deck stain market, it is completely unclear how Defendant would ever lose any profits if the composition of the subject product was in fact a complete secret, and was actually obtained by a competitor due to the confidential document.

Plaintiffs do not mean by these comments to minimize the impropriety of the filing, or the profits that Defendant undoubtedly earns from the sale of Thompson's WaterSeal deck stain products.  But there are certain facts that mitigate against any erosion of such profits if the particular document involved were disclosed to a competitor – in addition to the limitations above, and the competitors' own ability to reverse engineer the components if they wanted.

There are literally hundreds of exterior wood and deck stain products on the market and dozens of brand competitors.  Every hardware store has an entire aisle of such products, and the attributes between the numerous brands and styles is nearly discernible other than by labeling and marketing.  It is actually unclear if this product is even one of Defendant's top sellers <u>in this category</u>.  In Defendant's own public filings, they acknowledge that they also sell deck stains under the brand labels "SuperDeck," "Cabot," "Minwax," and "Valspar," and not just

"Thompson's." In turn, they compete against themselves for shelf space.  Moreover, it is unclear

if the subject product, "Thompson's WaterSeal Penetrating Timber Oil" is even its best-selling

deck stain product under the "Thompson's WaterSeal" brand.  In addition to "penetrating timber

oil" variation taking up less shelf space in stores, the "Thompson's WaterSeal" website

subjugates the penetrating timber oil variation to the bottom of the page, below "Exterior Stains."

https://www.thompsonswaterseal.com/waterproofing-products.  In fact, Defendant's "penetrating

timber oil" variation is itself broken up into 3 separate products and formulations: solid, semi-

transparent and transparent, each with different tints.

https://www.thompsonswaterseal.com/waterproofing-products/penetrating-timber-oil.

       This overview of the market and Defendant's own product lines was merely to

demonstrate that if a competitor were to discern the limited formula components for the

Defendant's Thompson's WaterSeal brand for its penetrating timber oil variation for its semi-

transparent version and for its teak colored product, it would be identifying the formula for one

of a hundred deck stains amongst Defendant's own exterior wood stain products and amongst

hundreds of broader market variations.

       Even if a competitor did obtain the formula and created its own "knock-off," how would

it ever take market share away from Defendant for this one product?  From the above review, it

is clearly a small piece of a massive deck stain market, even amongst Defendant's own

competing products.  Such speculative and self-serving conclusions asserted by defendant in its

motion are completely unsubstantiated.  It would undoubtedly require a massive marketing effort

and the precise replication of the formula would be almost immaterial to the effort.  The burden

is on Defendant to demonstrate any possible injury, and it has not even attempted to actually do

so here.  Plaintiffs are confident that no such proof could be realistically provided under the circumstances.

***

Plaintiffs' counsel improperly filed two confidential document with the court, but these

### III.    LEGAL ARGUMENT

#### A.    Standards

A finding of civil contempt is a disciplinary measure not to be taken lightly, and where there is reason to doubt the wrongfulness of the respondent's conduct, the contempt motion should not be granted. See *FTC v. Lane Labs-USA, Inc.*, 624 F.3d 575, 582 (3d Cir. 2010) (courts should hesitate to adjudge contempt where there is ground to doubt the wrongfulness of the conduct); see also *Thompson v. Johnson*, 410 F. Supp. 633, 640 (E.D. Pa. 1976) ("The exercise of the power to find and to punish for contempt is, however, discretionary, and should be undertaken 'with the utmost sense of responsibility and circumspection.").

As noted by the court in *Quinter v. Volkswagen of Am.*, 676 F.2d 969, 974–75 (3d Cir. 1982), "in civil contempt proceedings enforcement of the rights and remedies of a litigant is the ultimate object. The relief granted in civil contempt proceedings is compensatory or coercive and usually takes the form of a fine in the amount of the damages sustained by petitioner and an award of costs and attorney's fees. … **The fine imposed for civil contempt, however, must not exceed the actual damages caused the offended party by a violation of the court's order**." *Id.* (citations omitted in the quote), *but citing in conclusion, United States v. United Mineworkers*, 330 U.S. 258, 304 (1947); and *National Drying Machinery Co. v. Ackoff*, 245 F.2d 192, 193-94 (3d Cir. 1957).

Civil contempt and criminal contempt sanctions differ in their underlying purpose. Sanctions for criminal contempt are "punitive, to vindicate the authority of the court." *Acosta v. N & B Lundy Corp.,* 2017 WL 1709438, at \*1–2 (M.D. Pa., May 3, 2017). Civil contempt sanctions, on the other hand, are "penalties designed to compel future compliance with a court order, and are considered to be coercive and avoidable through obedience." *Id.* A finding of contempt, therefore, does not automatically give rise to liability for damages. *In re Mariner Post-Acute Network,* 329 B.R. 481, 489 (Bankr. D. Del. 2005).

A limited number of other courts have addressed situations where civil sanctions were sought despite an accidental violation of an order and a the lack of demonstration of actual harm. In *E.E.O.C. v. Dial Corp.*, 2001 WL 1945089, at \*6 (N.D. Ill. Dec. 6, 2001), the court determined that it would not award any compensatory damages for accidental filing of confidential information in absence of any evidence of actual damage. Similarly, the Third Circuit Court of Appeals, as noted above, has stated that a fine may only be imposed payable to the complainant if it is based upon evidence of an actual loss. *McDonald's Corp. v. Victory Invs.*, 727 F.2d 82, 87 (3d Cir. 1984).

### B.    Application to Present Circumstances

Plaintiff's undersigned counsel has admitted responsibility for the improper and accidental filing of two confidential pages. Steps were immediately taken to remediate the situation, and has taken steps to ensure that it does not happen again. Undersigned counsel appreciated the gravity of the situation when it happened and appreciates the gravity of the situation presently.

The above extensive review, which will not be repeated here, demonstrates though that Defendant's demands for monetary sanctions of any nature beyond attorney's fees are unjustified, and that Defendant has certainly not demonstrated any actual damages arising from the filings.  Defendant's further or alternative effort to limit future discovery or more severe sanctions also are not justified under the circumstances.  They are indirect substitutes for unsupported financial damage compensation (in the form of partial summary judgment, or limitations on future proper discovery), or unnecessary sanctions on the innocent Plaintiffs to punish Plaintiffs' counsel office for the accidental filing.  Punishment is not a component of civil contempt, and punishment of the innocent Plaintiffs is doubly inappropriate under the law as to civil contempt set forth above.

Plaintiff's counsel's office, through both undersigned counsel and paralegal Scott Branson, has provided the court and Defendant with sworn statements as to the unfortunate events that brought us here, as well as the history of the subject documents and the measures in place to prevent any improper disclosure in the future.  Plaintiffs have suggested some additional prophylactic measures that Plaintiffs' counsel would undertake to provide further assurance to Defendant and the Court as to the maintenance of confidential documents (both the present two and future ones).  Plaintiffs' counsel's office is willing to reimburse defendant for its costs to bring this issue to the court's attention and to remove the offending documents from public view.

Any sanctions beyond these actual compensatory measures is not justified by the record, and respectfully should be denied.

**IV.      CONCLUSION**

Plaintiffs' counsel apologizes again to the court and Defendant for the events that have

brought us to this point.  Plaintiffs respectfully request though that this Honorable Court deny

Defendant's Motion for Sanctions as demanded and instead enter the proposed Order attached to

this response, or one of its own that properly addresses the issues before the court.


**Dated:**      March 10, 2022          **BY:**    _____

                                                Kenneth T. Levine (No. 60984)
                                                **de Luca Levine LLC**
                                                Three Valley Square, Suite 220
                                                Blue Bell, PA 19422
                                                Phone:  (215) 383-0081
                                                Fax:  (215) 383-0082 (fax)
                                                klevine@delucalevine.com

                                                *Attorneys for Plaintiffs*

**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

**SCOTT AND ANDREA MAINS,**
        **Plaintiffs**
    **v.**

**THE SHERWIN-WILLIAMS COMPANY,**
        **Defendant**

**Case No.  5:20-cv-00112-JMG**

**CERTIFICATE OF SERVICE**

I hereby certify that on the date indicated below the above-referenced Plaintiff's Response in Opposition to Defendant's Motion for Sanctions was served upon the following by way of the court ECF filing system upon the following counsel:

C. Tyler Havey (No. 80877) - thavey@grsm.com
Ann Thornton Field (No. 52130) - afield@grsm.com
Eric C. Rosenberg (No. 317144) - erosenberg@grsm.com
**Gordon Rees Scully Mansukhani, LLP**
Three Logan Square
1717 Arch Street, Suite 610
Philadelphia, PA 19103
Phone: (215) 561-2300 / Fax:  (215) 693-6650
*Attorney for Defendant,*
*The Sherwin-Williams Company*

**Dated:**    March 10, 2022    **BY:**

Kenneth T. Levine (No. 60984)
**de Luca Levine LLC**
Three Valley Square, Suite 220
Blue Bell, PA 19422
(215) 383-0081 / Fax: (215) 383-0082
klevine@delucalevine.com
*Attorneys for Plaintiffs*