**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

_____

SCOTT MAINS, *et al.,*                :
               Plaintiffs,       :
                               :
             v.                 :       Civil No. 5:20-cv-00112-JMG
                               :
THE SHERWIN-WILLIAMS COMPANY,   :
d/b/a THE THOMPSON'S COMPANY,     :
              Defendant.      :

_____

**MEMORANDUM OPINION**

**GALLAGHER, J.**                                                          **May 6, 2022**

      Protective orders serve an important function in litigation. In products liability cases, they are particularly significant. They ensure that parties are shielded from "annoyance, embarrassment, oppression, or undue burden or expense." FED. R. CIV. P. 26(c). And they protect against the mass disclosure of "trade secret[s] or other confidential research, development, or commercial information." FED. R. CIV. P. 26(c)(1)(G). Just because a company is sued does not mean that its competitors should be able to plumb through federal court dockets and pluck proprietary information from public filings.

      It is against this backdrop that Plaintiffs—State Farm Fire and Casualty Insurance Company, as the subrogating insurer for Scott and Andrea Mains—and Defendant—The Sherwin-Williams Company—entered a confidentiality and protective order. (ECF No. 27.) In violation of that order, Plaintiffs' counsel attached Defendant's confidential product composition information to a public filing, for the entire world to see. (*See* ECF No. 42.) Notwithstanding that first violation, Plaintiffs' counsel did the same thing again two months later. (*See* ECF No. 54.)

      Defendant now moves for sanctions. (ECF No. 62.) For the reasons that follow, Defendant's motion is granted in part.

## I.    BACKGROUND

Plaintiffs Scott and Andrea Mains allege that their home spontaneously combusted after they applied Defendant's WaterSeal product to their deck.  (ECF No. 36 at ¶¶ 5–10.)  They bring claims against Defendant for: (1) strict liability; (2) negligence; and (3) breach of implied warranty. (*Id.* at ¶¶ 12–42.)

Though the facts of this case are relatively straightforward, the scope of discovery has been hotly disputed.  Initially, "the parties acknowledged that this case would implicate Sherwin-Williams' confidential trade secrets and other proprietary information," so the Court ordered the entry of a confidentiality and protective order.  (ECF No. 62-1 at 4; *see also* ECF No. 27.) Thereafter, the parties disputed the appropriateness of discovery concerning products similar to the subject WaterSeal product.  (*See generally* ECF No. 46.)  The Court held two discovery conferences and ultimately denied Plaintiffs' request for "similar product" discovery.  (*See id.*; *see also* ECF Nos. 33, 45.)

But that was not end of the parties' disagreements.  Plaintiffs continued to request information responsive to their requests for production, namely, documents concerning "the development of the subject product," "the individuals . . . who participated in the development of the subject product," "the subject product[']s composition," and "all changes to the subject product's composition and/or its labeling from initial production to the present."  (ECF No. 53-1 at 3.)  To that end, on November 18, 2021, Plaintiffs' counsel filed an affidavit.  But that affidavit "placed in the public record certain Sherwin-Williams confidential product composition information."  (ECF No. 62-1 at 4.)  The affidavit was later removed from the docket.  (*See* ECF No. 42.)

Two months later, on January 27, 2022, Plaintiffs filed a motion to compel.  (ECF No. 53.) Once again, Plaintiffs' counsel "placed information marked 'confidential' under the Protective

Order on the public docket." (ECF No. 62-1 at 4.) The exhibit that included confidential information was later removed from the docket.[1] (*See* ECF Nos. 54–55.)

On February 2, 2022, Defendant informed the Court that it would be moving for sanctions "due to the severity of the risk of harm caused by [Plaintiffs'] unlawful conduct on January 27, 2022." (ECF No. 57 at 1.) The Court set a briefing schedule (ECF No. 61), and the matter remained stayed to address this dispute. (*See* ECF No. 52.) Defendant's motion for sanctions is now ripe for disposition.

## II.    STANDARD

"[T]he court may find a party in civil contempt and impose sanctions if the party fails to obey a discovery order." *Grant Heilman Photography, Inc. v. Pearson Educ., Inc.*, No. 11-4649, 2018 WL 2414984, at *2 (E.D. Pa. May 29, 2018) (citing FED. R. CIV. P. 37(b)(2)). "In order to establish that a party is liable for civil contempt, the moving party must prove three elements: (1) that a valid order of the court existed; (2) that the [violating party] had knowledge of the order; and (3) that the [violating party] disobeyed the order." *Sec'y of Labor v. Altor Inc.*, 783 F. App'x 168, 171 (3d Cir. 2019) (internal quotation marks and citation omitted). "These elements must be proven by clear and convincing evidence, and ambiguities must be resolved in favor of the party charged with contempt." *Id.* (internal quotation marks and citation omitted); *see also John T. ex rel. Paul T. v. Del. Cnty. Intermediate Unit*, 318 F.3d 545, 552 (3d Cir. 2003) ("[E]vidence . . . regarding . . . good faith does not bar the conclusion . . . that [the violating party] acted in contempt." (internal quotation marks and citation omitted)).

"Sanctions for civil contempt serve two purposes: to coerce the [violating party] into compliance with the court's order and to compensate for losses sustained by the disobedience."

---

[1]    Plaintiffs' counsel concedes that he "improperly filed two confidential document[s] with the court." (ECF No. 63 at 12.)

*Robin Woods Inc. v. Woods*, 28 F.3d 396, 400 (3d Cir. 1994) (internal quotation marks and citation omitted).  "Generally, trial courts have wide discretion in fashioning remedies, including sanctions, where appropriate in the event of . . . violations of orders."  *McNulty v. Middle E. Forum*, No. 19-5029, 2020 WL 7769737, at *2 (E.D. Pa. Dec. 30, 2020) (citation omitted).

## III.    DISCUSSION

Defendant requests that Plaintiffs' counsel be held in contempt and asks the Court to impose sanctions.[2]  The Court considers these issues in turn.

### A.    Civil Contempt

Plaintiffs' counsel's conduct constitutes grounds for civil contempt.  It is undisputed that: (1) the Court's confidentiality and protective order is a valid court order; (2) Plaintiffs' counsel had knowledge of that order; and (3) by "improperly fil[ing] two confidential document[s] with the court," Plaintiffs' counsel disobeyed that order.  (ECF No. 63 at 12.)  Having found these three elements satisfied, the Court concludes that Plaintiffs' counsel is in civil contempt for violating the confidentiality and protective order.  *See John T.*, 318 F.3d at 552.

### B.    Contempt Sanctions

Broadly speaking, Defendant requests five types of sanctions.  First, it requests that "Plaintiffs and their counsel . . . reimburse Sherwin-Williams' fees and costs associated with bringing this matter to the Court's attention."  (ECF No. 62-1 at 7.)  This request is warranted; in fact, the Federal Rules of Civil Procedure require such a remedy.  *See* FED. R. CIV. P. 37(b)(2)(C) ("[T]he court must order the disobedient party, the attorney advising that party, or both to pay the reasonable expenses, including attorney's fees . . . .");  *see also Robin Woods*, 28 F.3d at 400.  And, for what it's worth, Plaintiffs' counsel does not oppose this sanction.  (ECF No. 63 at 14

---

[2]       It is Plaintiffs' counsel—not Plaintiffs themselves—who engaged in the misconduct here. So the Court focuses on his actions.

("Plaintiffs' counsel's office is willing to reimburse defendant for its costs to bring this issue to the court's attention . . . .").)

Second, Defendant requests "monetary sanctions equivalent to a reasonable loss in sales." (ECF No. 62-1 at 9.)  Such a severe sanction is necessary, Defendant argues, because its business has been "seriously jeopardized" by the public disclosure of "its proprietary formula."  (*Id.*)

The Court does not minimize the seriousness of Plaintiffs' counsel's misconduct.  At best, it was negligent.  At worst, reckless.  But the Court cannot "compensate Sherwin-Williams for the competitive harm" it *may* have suffered because of that misconduct.  (*Id.* at 8.)  "[C]ivil contempt sanctions are not punitive in nature," *Grant Heilman*, 2018 WL 2414984, at *3, and any compensatory sanctions "must not exceed the actual loss suffered by the party that was wronged." *Elkin v. Fauver*, 969 F.2d 48, 52 (3d Cir. 1992).  In other words, compensatory sanctions "must be based on evidence of a complainant's actual loss."  *Gregory v. Depte*, 896 F.2d 31, 34 (3d Cir. 1990) (citation omitted).

As Defendant recognizes, "it may ultimately prove impossible to ascertain with absolute certainty who actually accessed Sherwin-Williams' proprietary formulation while it was available for the entire world to see."  (ECF No. 62-1 at 8.)  In practice, that means Defendant has not produced, and likely cannot produce, any evidence—beyond conjecture—that links Plaintiffs' counsel's violation of the protective order to a loss of sales.  Imposing compensatory sanctions without such an evidentiary link is simply a bridge too far.  *Cf. N.Y. State Nat'l Org. for Women v. Terry*, 886 F.2d 1339, 1353 (2d Cir. 1989) ("[S]ome proof of loss must be present . . . ." (citation omitted)).

Third, Defendant requests "terminating sanctions and dismissal of this lawsuit."  (ECF No. 62-1 at 9.)  "Dismissal must be a sanction of last, not first, resort."  *Rawls v. Gibbs*, 741 F. App'x

108, 109 (3d Cir. 2018) (internal quotation marks and citation omitted).[3]  "[C]ourts, generally, are reluctant to visit the sins of the attorneys upon the heads of their clients by dismissing valid and meritorious claims." *In re Tutu Wells Contamination Litig.*, 162 F.R.D. 46, 73 (D.V.I. 1995).

Dismissal is appropriate only upon consideration of six factors: "(1) the extent of the party's personal responsibility; (2) the prejudice to the adversary[;] . . . (3) a history of dilatoriness; (4) whether the conduct of the party or the attorney was willful or in bad faith; (5) the effectiveness of sanctions other than dismissal[;] . . . and (6) the meritoriousness of the claim or defense." *Rawls*, 741 F. App'x at 109 (quoting *Poulis v. State Farm Fire & Cas. Co.*, 747 F.2d 863, 868 (3d Cir. 1984)).

"The first factor asks whether the party himself, as opposed to the party's counsel, bears personal responsibility for the action or inaction." *Cox v. United Parcel Serv., Inc.*, 753 F. App'x 103, 105 (3d Cir. 2018) (internal quotation marks and citation omitted).  The misconduct at issue here falls solely on the shoulders of Plaintiffs' counsel.  So this factor does not support dismissal.

As to the second factor, "[p]rejudice . . . includes deprivation of information through non-cooperation with discovery, and costs expended obtaining court orders to force compliance with discovery." *Adams v. Trs. of N.J. Brewery Emps.' Pension Tr. Fund*, 29 F.3d 863, 874 (3d Cir. 1994) (citation omitted).  Plaintiffs' counsel's actions certainly prejudiced Defendant "by causing it to expend extra resources" and litigate the instant motion.  *Woo v. Donahoe*, No. 12-1265, 2013 WL 5636623, at *3 (E.D. Pa. Oct. 16, 2013).  So the second factor points toward dismissal.

Turning to the third factor, "[e]xtensive or repeated delay or delinquency constitutes a history of dilatoriness, such as consistent non-response to interrogatories, or consistent tardiness

---

[3]      Notably, neither party cites the leading case to consider case-terminating sanctions, *Poulis v. State Farm Fire & Cas. Co.*, 747 F.2d 863, 868 (3d Cir. 1984).  The Court is therefore left to address the *Poulis* factors without input from counsel.

in complying with court orders." *Adams*, 29 F.3d at 874 (citation omitted).  The misconduct at issue here does not involve dilatoriness, so this factor does not support dismissal.

Next, "[i]n evaluating a dismissal, this court looks for the type of willful or contumacious behavior which [is] characterized as flagrant bad faith." *Id.* at 875 (internal quotation marks and citation omitted).  "Willfulness involves intentional or self-serving behavior." *Id.*  As mentioned above, Plaintiffs' counsel's actions were, charitably speaking, negligent.  But the record does not support a finding that his conduct was motivated by bad faith.  So this factor does not support dismissal.

"Before dismissing a case with prejudice, a district court should consider alternative sanctions." *Id.* at 876.  Monetary sanctions, including attorney's fees and costs, are warranted here, as are certain evidentiary sanctions that are discussed below.  Given the availability and imposition of these alternative sanctions, this factor does not support dismissal.  *See id.* ("[D]istrict courts should be reluctant to deprive a plaintiff of the right to have his claim adjudicated on the merits . . . ." (internal quotation marks and citation omitted)).

Finally, the Court must consider the meritoriousness of Plaintiffs' claims.  "A claim, or defense, will be deemed meritorious when the allegations of the pleadings, if established at trial, would support recovery by plaintiff or would constitute a complete defense." *Id.* (quotation marks omitted).  "When both sides can make out prima facie cases, this factor can be neutral." *Cox*, 753 F. App'x at 106.  Such is the case here.

On balance, then, the *Poulis* factors do not warrant dismissal.  Four of the six factors weigh against dismissal, and any "doubts should be resolved in favor of reaching a decision on the merits." *Adams*, 29 F.3d at 878 (internal quotation marks omitted).  "[I]t is the cumulative weighing of all factors in the context of the complete litigation history which leads the Court to its determination as to whether the action should be dismissed." *Woo*, 2013 WL 5636623, at *5

(internal quotation marks and citation omitted).  Here, that weighing points toward alternative sanctions—not dismissal.

Defendant next requests that Plaintiffs' counsel "return or destroy every single confidential document produced in discovery"; that "discovery on product composition should be closed"; and that Plaintiffs "be barred from relying on Sherwin-Williams' formulation for any purpose in this case." (ECF No. 62-1 at 10–11.)  The Court grants this multifaceted request in part.  As an initial matter, the Court will close discovery on product composition.  *Cf. United States v. Birch*, 591 F. App'x 54, 56 (3d Cir. 2015) ("District courts have broad authority to direct discovery . . . ." (citation omitted)).  Such a remedy is necessary not only to protect against future discovery abuses, but also to ensure the expeditious resolution of this action.[4]  That said, to ensure that this case is resolved on the merits, the Court will not require Plaintiffs to return or destroy any confidential information at this time, nor will it bar Plaintiffs from relying on said information moving forward.[5]  *Cf. Knoll v. City of Allentown*, 707 F.3d 406, 410 (3d Cir. 2013) (describing "the ability

---

[4]    Indeed, the pace of this litigation has been tantamount to watching paint dry.  The Court already amended the scheduling order on two occasions.  (*See* ECF Nos. 24, 37.)  And the operative fact discovery deadline elapsed on December 30, 2021.  (ECF No. 37 at ¶ 1.)

    The Court previously indicated "that the discovery period w[ould] be extended **only** for the purpose of resolving" Plaintiffs' pending motion to compel.  (ECF No. 52 at 1 n.1 (emphasis added); *see also* ECF No. 53.)  Discovery on product composition is now closed, so Plaintiffs' motion to compel will be denied by separate order.  *Cf. AlarMax Distribs. v. Honeywell Int'l, Inc.*, No. 14-1527, 2019 U.S. Dist. LEXIS 38017, at *4 (W.D. Pa. Mar. 11, 2019) ("Although Fed. R. Civ. P. 37 does not specify any time limit within which a Motion to Compel must be brought, courts have made it clear that a party seeking to compel discovery must do so in a timely fashion." (internal quotation marks and citation omitted)).

    As discovery on product composition was the final portion of discovery still outstanding, *all* discovery in this case is now closed.  The Court will schedule a status conference to reset the remaining pretrial deadlines.

[5]    Plaintiffs' counsel is also "willing to agree to provide all future court filings to Defendant's counsel a day before such papers are filed to ensure that no future violation occurs."  (ECF No. 63 at 5.)  The Court finds this proposal prudent.

of the parties to try their cases on the merits" as a "primary concern" when shaping sanctions). Plaintiffs' counsel is reminded, however, that the confidentiality and protective order requires parties to either destroy or return all confidential documents "[w]ithin sixty (60) days after the conclusion of all aspects of the litigation." (ECF No. 27 at ¶ 10.) Plaintiffs' counsel is similarly warned that any further violations of the confidentiality and protective order will result in the immediate dismissal of this action with prejudice.

Finally, Defendant asks "Plaintiffs and their counsel to account for the manner in which they have handled Sherwin-Williams' confidential information." (ECF No. 62-1 at 10.) The Court finds that this request has already been addressed by the affidavit attached to Plaintiffs' opposition briefing. (*See* ECF No. 63-3.)

## IV.   CONCLUSION

"[C]ompliance with Court orders . . . is not optional." *Kelly v. DeJoy*, No. 19-204, 2021 WL 914207, at *2 (W.D. Pa. Mar. 10, 2021). In dereliction of this bedrock principle, Plaintiffs' counsel twice breached the terms of a confidentiality and protective order. Those breaches may not have been intentional, but that does not make them any less serious.

Plaintiffs' counsel is therefore held in contempt, and the Court will impose the sanctions described above. An appropriate order follows.

BY THE COURT:

*/s/ John M. Gallagher*
JOHN M. GALLAGHER
United States District Court Judge