**GORDON REES SCULLY MANSUKHANI, LLP**
C. Tyler Havey (No. 80877)
Ann Thornton Field (No. 52130)
Eric C. Rosenberg (No. 317144)
Kristen F. Mazzeo (No. 320531)
Three Logan Square
1717 Arch Street, Suite 610
Philadelphia, PA 19103
Phone: (215) 717-4005
Emails:      afield@grsm.com
             thavey@grsm.com
             erosenberg@grsm.com
             kmazzeo@grsm.com
*Counsel for Defendant The Sherwin-Williams Company*

**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| SCOTT AND ANDREA MAINS, | : | |
| | : | |
| Plaintiffs, | : | Civil Action No. 5:20-cv-00112-EGS |
| | : | |
| v. | : | |
| | : | **JURY TRIAL DEMANDED** |
| THE SHERWIN-WILLIAMS COMPANY, | : | **(12 JURORS)** |
| doing business as The Thompson's Company, | : | |
| | : | |
| Defendant. | : | |

**DEFENDANT THE SHERWIN-WILLIAMS COMPANY'S MEMORANDUM OF LAW
<u>IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT</u>**

## TABLE OF CONTENTS

**Page**

I.     PRELIMINARY STATEMENT ................................................................. 1

II.    STATEMENT OF UNDISPUTED MATERIAL FACTS ............................................. 3

    A.     Background .................................................................. 3

    B.     Thompson's WaterSeal Penetrating Timber Oil Label.................................. 4

    C.     Plaintiffs Did Not Read the Warning Label........................................ 5

III.   LEGAL ARGUMENT .......................................................................... 6

    A.     Standard of Review ............................................................ 6

    B.     Plaintiffs Have No Evidence of Causation Because Plaintiffs Admittedly
        Never Read the Product Label .................................................. 7

    C.     Expert Testimony is Required to Prove Fire Cause and Origin........................ 8

    D.     Expert Testimony is Required to Establish a Failure to Warn Claim................. 9

    E.     No Expert Report or Evidence on Design and Manufacturing Defects.............. 10

    F.     Warning Defect Claims are Entirely Preempted by the FHSA.......................... 11

    G.     Implied Warranty Claims are Preempted and/or Improper in this Context.......... 16

IV.    CONCLUSION............................................................................... 17

i

## I.     __PRELIMINARY STATEMENT__

This property damage subrogation action arises from a June 9, 2019, fire at a residential property located in Easton, Pennsylvania.  Plaintiffs allege the fire was caused by the "spontaneous combustion" of waste rags soaked with Thompson's® WaterSeal® Penetrating Timber Oil, an exterior-use wood protectant manufactured by The Sherwin-Williams Company ("Sherwin-Williams").  Specifically, Plaintiffs allege that homeowner Scott Mains left waste-soaked rags in an open metal paint tray after refinishing work on his deck, causing the rags to self-heat and ignite (i.e. "spontaneous combustion").  Plaintiffs contend, *inter alia*, that the label content concerning spontaneous combustion was inadequate, and that this supposed inadequacy caused the fire.

Summary judgment is warranted, indeed compelled in this case, because Plaintiffs cannot sustain their threshold burden of proof as to <u>any</u> of their material claims or causes of action.  It is undisputed that the Thompson's label contains the words "DANGER!" and "COMBUSTIBLE!", and that it further informs users that "[r]ags, steel wool, other waste soaked with this product…may catch fire if improperly discarded.  Immediately place rags, steel wood, other waste soaked with this product…in a sealed, water filled, metal container."  And it is equally undisputed that Plaintiffs never followed or even bothered to read or heed this label content.  This is a fatal deficiency in Plaintiffs' warning claim, because regardless of the adequacy of the label, it is beyond dispute that had Plaintiffs read and heeded the label content, no fire would have occurred as alleged by Plaintiffs, since rags with stain on them will not spontaneously combust if placed in a sealed, water filled metal container.  *Dolby v. Ziegler Tire & Supply Co.*, No. 694 WDA 2016, 2017 WL 781650, at *3 (Pa. Super. Ct. Feb. 28, 2017) (failure to warn claim requires showing that "the user of the product would have avoided the risk" if user followed the warning).

Furthermore, Plaintiffs cannot prove that the mechanism of fire was "spontaneous combustion" without a qualified expert to opine as to the origin and cause of the fire, yet here, Plaintiffs did not produce or disclose any such expert or expert report substantiating their core claim that the fire occurred when waste-soaked rags self-heated and caught fire.  This is a black and white, predicate causation issue – without an expert to establish how the fire originated, Plaintiffs cannot prove that the fire would not have occurred but for the supposed defect that allegedly renders the product and its label content defective.  *Cf. Chubb v. On-Time Wildlife Feeders*, 578 F. Supp. 2d 737 (M.D. Pa. 2008) (granting summary judgment where plaintiffs did not provide expert testimony on fire origin and cause); *State Farm Fire & Cas. Co. v. Cohen*, No. CV 19-1947, 2020 WL 5369626, at *2 (E.D. Pa. Sept. 8, 2020) (summary judgment entered in favor of defendant where plaintiff failed to produce expert report as to "cause of the fire").[1]

Likewise, Plaintiffs also contend, again without a disclosed expert witness or report, that the Thompson's product was defectively designed and manufactured.  However, such boilerplate product liability claims are contentions that exist only in the Amended Complaint, and have no factual or expert support, as Plaintiffs did not timely pursue them, and this Court subsequently denied Plaintiffs motion to compel discovery regarding product design.  Without any evidence of design or manufacturing defect—or an expert that might substantiate those threadbare allegations at trial—Plaintiffs cannot their burden as to any alleged design or manufacturing defect.

Plaintiffs' warning defect claim—the crux of the Amended Complaint—also fails as a matter of law.  First, the claim is expressly preempted by the Federal Hazardous Substances Act, 15 U.S.C. § 1261, *et seq*., and its enabling regulations, 16 C.F.R. § 1500 *et seq*. (the "FHSA").

---

[1]     Notably, in the *Cohen* case, State Farm was represented by the same firm representing Plaintiffs here.

The FHSA provides federally mandated "uniform requirements for adequate cautionary labeling." *McGrath v. Rust-Oleum Corp.*, No. 12-1719, 2013 WL 2896966, at *2 (E.D. Pa. June 12, 2013) (Padova, J.) (quoting *Richards v. Home Depot, Inc.*, 456 F.3d 76, 78 (2d Cir. 2006)).  Any attempt to impose any label requirement that is not identical to that required by the FHSA is preempted by the FHSA.  *Cf. McGrath*, 2013 WL 2896966, at *3 ("FHSA preempts any state cause of action that seeks to impose a labeling requirement different from the requirements found in the FHSA"). Second, Plaintiffs failed to disclose an expert or an expert report to support any would-be claim that the warning label failed to comport with any FHSA labeling requirement, thereby precluding any basis for any finding that the product label was somehow defective.  For these reasons, summary judgment should be entered in favor of Sherwin-Williams and against Plaintiffs.

## II.     STATEMENT OF UNDISPUTED MATERIAL FACTS

### A.     Background

Plaintiffs Scott and Andrea Mains ("Plaintiffs") commenced this civil action on January 7, 2020 by filing a lawsuit against Defendant The Sherwin-Williams Company ("Sherwin-Williams").  *See* Statement of Undisputed Material Facts ("SUMF") at ¶ 1.  Plaintiffs filed an Amended Complaint on September 13, 2021 solely to amend a typographical error in Paragraph 7 of the Complaint.  *Id.* at ¶ 3.  Plaintiffs sue on behalf of their subrogating property and casualty insurer to recover property insurance proceeds that Plaintiff received following a June 8, 2019 fire that damaged Plaintiffs' home and personal property located at 3701 Timberlane Drive, Easton, Pennsylvania 18045.  *Id.* at ¶ 4.

Plaintiffs allegedly purchased "one or more containers of  Thompson's WaterSeal Penetrating Timber Oil, a product designed, formulated, manufactured, tested, packaged, labeled, marketed, sold and/or distributed" by Sherwin-Williams.  *Id.* at ¶ 5.  On June 8, 2019, Mr. Mains

3

"applied the subject stain product to his deck" and later "placed application materials containing and/or saturated with such product onto the lawn next to the deck" and a "fire later erupted at the property" that "resulted in extensive damage to Plaintiffs' real and personal property." *Id.* at ¶¶ 5-7. Plaintiffs claim that the "fire was…caused by the spontaneous combustion of the application materials containing and/or saturated with the subject stain product." *Id.* at ¶ 8.

Plaintiffs assert causes of action against Sherwin-Williams for alleged: (1) strict liability; (2) negligence; and (3) breach of implied warranty. *Id.* at ¶ 9. They contend that the Thompson's product was defective because it "lacked conspicuous, proper and adequate warnings, instructions and/or advice as to how to properly use, handle, dispose of and store application materials containing and/or saturated with the subject stain product." *Id.* at ¶ 10. Plaintiffs further claim that Sherwin-Williams "failed to conform the subject stain product labeling to prevailing and safe industry and/or governmental specifications and standards." *Id.* at ¶ 11. Sherwin-Williams pleads in its Answer to the Amended Complaint, *inter alia*, that Plaintiffs' claims are barred and/or preempted by the Federal Hazardous Substance Act, 15 U.S.C. § 1261, *et seq. Id.* at ¶ 13.

Plaintiffs' expert report deadline expired on November 8, 2021. *Id.* at ¶¶ 16-18. This Court did not extend the expert deadline, and closed all discovery on May 6, 2022. *Id.* at ¶¶ 20. On June 28, 2022, this Court issued a pretrial scheduling order without extending the then-expired expert and discovery deadlines. *Id.* at ¶¶ 21-22.

**B.** **Thompson's WaterSeal Penetrating Timber Oil Label**

Thompson's WaterSeal Penetrating Timber Oil is a wood stain product manufactured by Sherwin-Williams. The product has a flash point of 111.2 °F (44 °C) and is a combustible liquid. *See* SUMF, at ¶ 36. The product label contains hazard identification and precautionary information, as well as information on how to properly use and dispose of the product. *Id.* at ¶ 37.

The front panel of the product label includes the word "DANGER!" and "COMBUSTIBLE!" and "Before using, carefully read CAUTIONS on back panel" in white font on a black background:

> **DANGER!** HARMFUL OR FATAL IF SWALLOWED. **COMBUSTIBLE!** VAPOR HARMFUL IRRITATES EYES, SKIN AND RESPIRATORY TRACT. Before using, carefully read CAUTIONS on back panel.

*Id.* at ¶¶ 38-39.  The back panel of the label provides instructions for applying the product, as well as waste disposal information specifically addressing spontaneous combustion in black lettering on a white background, and surrounded by a black rectangular box or perimeter:

> **DANGER:** Rags, steel wool, other waste soaked with this product, and sanding residue may spontaneously catch fire if improperly discarded. Immediately place rags, steel wool, other waste soaked with this product, and sanding residue in a sealed, water-filled, metal container. Dispose of in accordance with local fire regulations.

*Id.* at ¶¶ 40-41.  The label also provides, in part, as follows:

> **CONTAINS VOLATILE ORGANIC COMPOUNDS.** Contents are **COMBUSTIBLE.** Keep away from heat and open flame. **VAPOR HARMFUL.** Use only with adequate ventilation. To avoid overexposure, open windows and doors or use other means to ensure fresh air entry during application and drying. If you experience eye watering, headaches, or dizziness, increase fresh air, or wear respiratory protection (**NIOSH** approved) or leave the area. Avoid contact with eyes and skin. Wash hands after using. Keep container closed when not in use. Do not transfer contents to other containers for storage. **FIRST AID:** In case of eye contact, flush thoroughly with large amounts of water for 15 minutes and get medical attention. For skin contact, wash thoroughly with soap and water. In case of respiratory difficulty, provide fresh air and call physician. If swallowed, call Poison Control Center, hospital emergency room, or physician immediately. **DELAYED EFFECTS FROM LONG TERM OVEREXPOSURE.** Contains solvents which can cause permanent brain and nervous system damage. Intentional misuse by deliberately concentrating and inhaling the contents can be harmful or fatal. **WARNING:** This product contains chemicals known to the State of California to cause cancer and birth defects or other reproductive harm. **DO NOT TAKE INTERNALLY. KEEP OUT OF THE REACH OF CHILDREN.**   2582 (6/14)

*Id*. at ¶ 42.

## C.   Plaintiffs Did Not Read the Warning Label

Plaintiff Scott Mains testified that he and his wife, Plaintiff Andrea Mains, purchased the home located at 3701 Timberlane Drive, Easton, Pennsylvania 18045 in 2017.  *Id.* at ¶ 24. Beginning sometime in 2018, Plaintiffs began to remodel the home, including re-staining portions of the wood deck using a stain that Mr. Mains purchased at Lowe's in 2019.  *Id.* at ¶ 25.  Audrey

Perilli—Mr. Mains's sister-in-law—began staining the deck on June 8, 2019, and applied the stain from a metal pan with a paint brush and paint roller, using rags to wipe excess stain after it was applied.  *Id.* at ¶¶ 26-27.  She did not read any warnings or instructions on the container label.  *Id.* at ¶ 28.  Mr. Mains testified that he used "old T-shirts" as waste rags to "clean off the excess stain on the deck" after applying it to the wood surface with the brush and roller, and that the waste rags were "pretty saturated" with excess stain.  *Id.* at ¶¶ 30-31.  Once he had finished for the day, Mr. Mains placed the saturated waste "rags and brush and rollers…in the paint tray" and placed them on the grass next to the deck.  *Id.* at ¶ 33.  Mr. Mains did not read any of the warnings or instructions on the container label.  *Id.* at ¶ 34.

## III.   LEGAL ARGUMENT

### A.   Standard of Review

Summary judgment is appropriate if "the pleadings, depositions, answers to interrogatories, admissions, and affidavits show there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law."  *Montgomery Cnty., Pa. v. MERSCORP Inc.*, 795 F.3d 372, 376 (3d Cir. 2015); *see also* Fed. R. Civ. P. 56(a).  A disputed issue is "genuine" only if there is a sufficient evidentiary basis on which a reasonable jury could find for the non-moving party. *Kaucher v. Cnty. of Bucks*, 455 F.3d 418, 423 (3d Cir. 2006) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).  A fact is "material" only if it has "the potential to alter the outcome of the case." *Favata v. Seidel*, 511 F. App'x 155, 158 (3d Cir. 2013).  If there is no factual issue, and if only one reasonable conclusion could arise from the record regarding the potential outcome under the governing law, summary judgment should be entered for the moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 246 (1986).

B.     **Plaintiffs Have No Evidence of Causation Because Plaintiffs Admittedly
Never  Read the Product Label**

Plaintiff Scott Mains and his sister-in-law Audrey Perilli testified that they did not read the

warnings or instructions printed on the Thompson's product container.  It is undisputed that label

contains the words "DANGER!" and "COMBUSTIBLE!" and that it further warns users that

"[r]ags, steel wool, other waste soaked with this product…may catch fire if improperly discarded.

Immediately place rags, steel wood, other waste soaked with this product…in a sealed, water filled,

metal container."  The fire would not have occurred if Mains and Perilli followed the warnings

and instructions on the label, because rags with stain on them will not spontaneously combust if

placed in a water filled metal container.  *Dolby v. Ziegler Tire & Supply Co.*, No. 694 WDA 2016,

2017 WL 781650, at *3 (Pa. Super. Ct. Feb. 28, 2017) (failure to warn claim requires showing that

"the user of the product would have avoided the risk" if user followed the warning).

Causation is "a question…decided by the court as a matter of law" where the facts show

that "the causation connection…is remote."  *Robertson v. Allied Signal, Inc.*, 914 F.2d 360, 367

(3d Cir. 1990).  Accordingly, summary judgment is appropriate where causation "was so remote

that  as  a matter of law,  the  actor  cannot  be  held  legally  responsible  for  the  harm  which

subsequently occurred."  *Lux v. Gerald E. Ort Trucking, Inc.*, 887 A.2d 1281 (Pa. 2005); *see also*

*Mellon* v. *Barre-National Drug Co.*, 636 A.2d 187, 191-92 (Pa. Super. 1993) ("[p]roof of causation

is a necessary element"); *Burnside v. Abbott Laboratories*, 505 A.2d 973, 978 (Pa. Super. 1985)

("An essential element of any cause of action in tort is…reasonable connection between the act or

omission of the defendant and the injury").

This is particularly true in failure to warn cases where the claimant did not read relevant

warnings or instructions associated with an allegedly defective product.  *Cf. Davis v. Berwind*

*Corp.*, 690 A.2d 186, 190 (Pa. 1997) (refusing to adopt a rule that would require manufacturer to

warn against dangers that "may arise if the states warnings are not heeded"); *see also Conti v. Ford Motor Co.*, 743 F.2d 195, 198 (3d Cir. 1984) (additional warnings would not have prevented injuries where there is "no evidence in the record to suggest" that the plaintiff would have done anything differently if "additional warnings were…prominently displayed"); *Montgomery v. Ethicon, Inc.*, No. 3:20-CV-915 DRL-MGG, 2021 WL 4860862 (N.D. Ind. Oct. 19, 2021) ("If a person hasn't read the warnings, no change to them would effectuate a different result. They would remain unread and unmotivating, and thereby non-causative."). Summary judgment is appropriate because the two product users—Scott Mains and Audrey Perilli—both testified conclusively that they never attempted to read the Thompson's warning label, and a different warning would not have, as a matter of law, changed the outcome. *See* SUMF, at ¶¶ 23-34.

### C.    Expert Testimony is Required to Prove Fire Cause and Origin

Plaintiffs did not identify a fire cause and origin expert before the November 8, 2021 deadline expired. Expert testimony is required to establish fire cause and origin in product liability cases. *Cf. State Farm Fire & Cas. Co. v. Holmes Prod.*, 165 F. App'x 182, 187 (3d Cir. 2006) (affirming trial court exclusion of fire expert's testimony and subsequent summary judgment to defendant). "It is clear that [Plaintiff] must have a cause and origin expert to provide an opinion to a reasonable degree to scientific certainty regarding the origin of the fire in its building as well as the cause of the fire." *Dyvex Indus., Inc. v. Agilex Flavors & Fragrances, Inc.*, No. 12-CV-0979, 2018 WL 1428232, at *8 (M.D. Pa. Mar. 22, 2018).

Without an expert to establish how the fire originated, Plaintiffs cannot prove that the fire would not have occurred but for the defects—*i.e.* the spontaneous combustion hazard and/or inadequate spontaneous combustion warning—that allegedly makes the product dangerous, and that would make Sherwin-Williams responsible for the fire at issue. *Cf. On-Time Wildlife Feeders*,

578 F. Supp. 2d at 742 (summary judgment to defendant and against Mr. Levine's client); *Cohen*, 2020 WL 5369626, at *2 (summary judgment to defendant and against client of Mr. Levine's law firm where plaintiff failed to produce expert report as to "cause of the fire").

Expert testimony is only excused where "the matter under consideration is simple and…obvious and within the range of comprehension of the average juror." *Cipriani v. Sun Pipe Line Co.,* 574 A.2d 706, 710 (1990). Certainly, the thermodynamics of an exothermic self-heating event involving a federally regulated product are not within the comprehension of a lay juror. *See*, *e.g.*, *Atl. States Ins. Co. v. Sherwin Williams Co.*, No. 999 MDA 2012, 2013 WL 11250659, at *12 (Pa. Super. Ct. Nov. 25, 2013) (addressing expert testimony on spontaneous combustion at trial). In fact, the advisory committee notes to Federal Rule of Evidence 702 provide that "experts might instruct the factfinder on the principles of thermodynamics." Summary judgment is therefore appropriate in favor of Sherwin-Williams absent any expert testimony as to fire cause and origin.

### D. Expert Testimony is Required to Establish a Failure to Warn Claim

Expert testimony is required to support alleged failure to warn claims. *Cf. Urbieta v. All-Am. Hose, LLC*, No. 1224 WDA 2018, 2019 WL 3385192, at *7 (Pa. Super. Ct. July 26, 2019) (without a warning expert, the plaintiff could not establish why product warning was inadequate or "demonstrate that…failure to warn…proximately caused…injuries"); *Nelson v. Am. Honda Motor Co.*, No. 118CV000210, 2021 WL 2877919, at *5 (W.D. Pa. May 17, 2021), *report and recommendation adopted*, No. 1:18-CV-210, 2021 WL 2646840 (W.D. Pa. June 28, 2021) ("the defendant may still prevail on summary judgment if it can demonstrate that expert testimony is necessary to support an essential element of the plaintiff's claim"); *Kline v. Zimmer Holdings, Inc.*, 662 F. App'x 121 (3d Cir. 2016) (affirming summary judgment, in part, because plaintiff failed to provide expert report as to warning defect claim).

This is particularly true in the context of failure to warn claims arising from alleged violations of FHSA labelling requirements.  *Cf. Torres-Rios v. LPS Lab'ys, Inc.*, 152 F.3d 11, 14 (1st Cir. 1998) (affirming summary judgment and requiring expert "evidence that the label fails to satisfy even the strict size requirements for safety labels" mandated by the FHSA); *Canty v. Ever-Last Supply Co.*, 685 A.2d 1365 (Law. Div. 1996) (expert required to "state a valid claim" for FHSA misbranding failure to warn claim).

Plaintiffs contend that the Thompson's product "lacked conspicuous, proper and adequate warnings, instructions and/or advice as to how to properly use, handle, dispose of and store application materials containing and/or saturated with the subject stain product" and that the warning "failed to conform…to prevailing and safe industry and/or governmental specifications and standards."  *See* SUMF, at ¶¶ 10-11.  Plaintiffs did not produce an expert report by November 8, 2021, and cannot demonstrate that the product label failed to adhere to the FHSA.  Without expert testimony at trial, there is no basis to prove that the warning label was inadequate for noncompliance with the complex regulatory scheme—save for the *ipse dixit* of counsel—and this crucial shortcoming respectfully requires summary judgment in favor of Sherwin-Williams.

### E.   No Expert Report or Evidence on Design and Manufacturing Defects

Expert testimony is required to establish the existence of a design defect under Pennsylvania law.  *Cf. Creazzo v. Sun*, 73 Pa. D. & C.4th 526 (Com. Pl. 2005), *aff'd sub nom. Creazzo v. Medtronic, Inc.*, 903 A.2d 24 (Pa. Super. 2006) (summary judgment to defendant where plaintiff offered "no opinion that the [product at issue] was defectively designed"); *Urbieta*, 2019 WL 3385192, at *5 (affirming dismissal where plaintiff's expert failed to identify a product design defect).  While expert testimony is "certainly desirable" in the context of manufacturing defect claims, it is "not essential" provided a plaintiff can demonstrate the following elements:

> (1) the malfunction of the product; (2) expert testimony as to a variety of possible causes; (3) the timing of the malfunction in relation to when the plaintiff first obtained the product; (4) similar accidents involving the same product; (5) elimination of other possible causes of the accident; and (6) proof tending to establish that the accident does not occur absent a manufacturing defect

*Wiggins v. Synthes (U.S.A.),* 29 A.3d 9, 13 (2011).

Plaintiffs allege that the Thompson's product was defective in design and manufacture. *See* SUMF, at ¶ 5. These boilerplate allegations are pled without any intention of actually pursuing them at trial. Indeed, Plaintiffs did not submit expert reports as to the alleged design and manufacturing defects prior to the November 8, 2021 expert report deadline, and Plaintiffs did not take any discovery from Sherwin-Williams as to product design, or as to the manufacturing processes involved in creating the Thompson's product. In fact, this Court denied Plaintiffs' efforts to obtain discovery on both similar products, similar incidents, and product design. *Id*. at ¶ 20. Plaintiff has not provided any expert testimony as to alleged design and manufacturing defects, and therefore summary judgment is appropriate absent triable issues of fact.

## F.   Warning Defect Claims are Entirely Preempted by the FHSA

The FHSA provides "nationally uniform requirements for adequate cautionary labeling of packages of hazardous substances which are sold in interstate commerce and are intended or suitable for household use." *McGrath*, 2013 WL 2896966, at *2 (quoting *Milanese v. Rust–Oleum Corp.,* 244 F.3d 104, 109 (2d Cir.2001) and H.R. Rep. No. 1861, 86th Cong., 2d Sess., p. 1 (1960)); *see also* H.R. Rep. No. 2166, 89th Cong., 2d Sess. 3 (1966) (impractical for the states to establish potentially different labels for a particular hazardous substance). "Hazardous substances intended, or packaged in a form suitable, for use in the household, means," in relevant part, the following:

> [A]ny hazardous substance, whether or not packaged, that under any customary or reasonably foreseeable condition of purchase, storage, or use may be brought into or around a house, apartment, or other place where people dwell, or in or around

any related building or shed including, but not limited to, a garage, carport, barn, or storage shed.

16 C.F.R. § 1500.3(c)(10)(i).  A "hazardous substance" is defined by the FHSA as:

Any substance or mixture of substances which (i) is toxic, (ii) is corrosive, (iii) is an irritant, (iv) is a strong sensitizer, **(v) is flammable or combustible,** or (vi) generates pressure through decomposition, heat, or other means, if such substance or mixture of substances may cause substantial personal injury or substantial illness during or as a proximate result of any customary or reasonably foreseeable handling or use, including reasonably foreseeable ingestion by children.

15 U.S.C. § 1261(f)(1)(A) (emphasis added); *see* 16 C.F.R. § 1500.3(b)(4)(i).

Each hazard has a specific definition in the FHSA.  Flammability depends on its flashpoint. Under the FHSA, "[t]he term *extremely flammable* shall apply to any substance having a flashpoint at or below 20 °F (-6.7 °C)," "[t]he term *flammable* shall apply to any substance having a flashpoint above 20 °F (-6.7 °C) and below 100 °F (37.8 °C)," and "the term *combustible* shall apply to any substance having a flashpoint above 100 °F (37.8 °C) to and including 150 °F (65.6 °C)."  16 C.F.R. § 1500.3(c)(6)(i)-(iii) (emphasis added)  Pursuant to the FHSA, the label for a hazardous substance must state conspicuously, *inter alia*, the following:

- signal word "**DANGER**" on substances which are extremely flammable
- signal word "**WARNING**" or "**CAUTION**" on all other hazardous substances
- statement of the principal hazard such as **Flammable** or **Combustible**
- precautionary measures describing the action to be followed or avoided

15 U.S.C. § 1261(p)(1) (emphasis added); *see also* 16 CFR § 1500.3(b)(14)(i).  These elements must appear in English, and be prominently placed on the label.  *See* 15 U.S.C. § 1261(p)(2). Warnings must be "in conspicuous and legible type in contrast by typography, layout, or color with other printed matter on the label." *Id.*

The FHSA does not "require any specific language on the labels" but "merely requires (1) that labels contain the signal word 'WARNING' or 'CAUTION' and (2) words which describe the potential hazard" also known as the principal hazard.  *Chem. Specialties Mfrs. Ass'n, Inc. v.*

*Allenby*, 958 F.2d 941, 949 (9th Cir. 1992).  The FHSA does not create a private right of action.

*IQ Products Co. v. Pennzoil Products Co.*, 305 F.3d 368, 373 (5th Cir. 2002).  Instead, if packaging

or labelling does not conform identically to the requirements of the FHSA, then a product is

"misbranded" pursuant to 15 U.S.C. § 1261(p), in which case the FHSA permits a limited "cause

of action alleging non-compliance" with the mandatory labeling requirements.  *Cf. Milanese*, 244

F.3d at 110.  In fact, Congress has **expressly preempted** all other claims as follows:

> [If] a hazardous substance or its packaging is subject to a cautionary labeling
> requirement under [the FHSA] designed to protect against a risk of illness or injury
> associated with a substance, no State . . . may establish or continue in effect a
> cautionary labeling requirement applicable to such substance or packaging and
> designed to protect against the same risk of illness or injury **unless such cautionary
> labeling requirement is identical** to the labeling requirement under [the FHSA]

*See* 15 U.S.C. § 1261, note Effect upon Federal and State Law (emphasis added).

All federal courts that have addressed this issue agree that the FHSA expressly preempts

any claims that attempt to impose obligations different from the FHSA and its enabling regulations.

*See, e.g,. Moss v. Parks Corp.*, 985 F.2d 736 (4th Cir. 1993), *cert. denied,* 509 U.S. 906, 113 S. Ct.

2999 (1993); *Comeaux v. National Tea Co.,* 81 F.3d 42, 44 (5th Cir. 1996); *Milanese*, 244 F.3d

104, 109 (2nd Cir. 2001); *Hunnings v. Texaco, Inc.*, 29 F.3d. 1480 (11th Cir. 1994); *Pennsylvania*

*Gen. Ins. Co. v. Landis*, 96 F. Supp 2d. 408, 414-15 (D.N.J. 2000), *aff'd*, 248 F.3d 1131 (3rd Cir.

2000); *Kirstein v. W. M. Barr & Co.*, 983 F. Supp. 753, 761 (N.D. Ill. 1997), *aff'd*, 159 F.3d 1065

(7th Cir. 1998); *Mwesigwa v. Dap, Inc., et al.,* 637 F.3d 884, 887 (8th Cir. 2011); *McGrath*, 2013

WL 2896966, at *6; *State Farm General Insurance Company a/s/o Pomerleau v. The Sherwin-*

*Williams Company, et al*. No. 2:21-cv-00220 (N.D.Ca. Sept. 23, 2021).

The Thompson's product is a "hazardous substance" subject to the FHSA's labelling

requirements because it has a flashpoint of 111.2°F, and is a combustible liquid, making it

"combustible" as the term defined by the FHSA and its enabling regulations.  *See* SUMF, at ¶ 36.

13

The product was purchased by Plaintiffs at Lowe's, a big box retail store open to the public, for the purpose of being used to renovate their dwelling. *Id*. at ¶ 25. Plaintiffs plead—though without any specific reference to the FHSA—that the Thompson's label is inadequate because it "failed to conform the subject stain product labeling to prevailing and safe industry and/or governmental specifications…to adequately warn Plaintiffs…that the subject stain product and byproducts thereof were susceptible to self-heating and/or spontaneous combustion." *Id*. at ¶ 11.

This claim fails as a matter of law because (1) the FHSA does not require Sherwin-Williams to include the term "spontaneous combustion" as a principal hazard on its warning label; and (2) the Thompson's container presents a conspicuous and prominent "combustion" warning as is required by the FHSA.   The FHSA prescribes a specific list of "principal hazards" that hazardous substances such as Thompson's must include on the warning label, including the terms "FLAMMABLE" and "COMBUSTIBLE."  15 U.S.C. § 1261(p)(1)(E).  The enabling regulations define "principal hazard" as "the principal or primary hazard(s) associated with a hazardous substance," and provides examples such as "FLAMMABLE."  16 C.F.R. § 1500.121(a)(2)(vii). Compliance with the FHSA requires only that a product manufacturer include the applicable "principal hazards" on a product label, and does not require that the label address "every potential hazard" that may exist.  *Canty,* 685 A.2d 1365, 1377 (1996) ("What matters is whether the label satisfies the requirements of the FHSA, not whether a label defines every phrase and addresses every potential hazard.");  *Mwesigwa*, 637 F.3d at 889 (label stating "WARNING! FLAMMABLE!" and to "[t]urn off…sources of ignition" complies with FHSA).

Numerous courts have specifically found that "spontaneous combustion" is not a principal hazard required by the FHSA.  In *McGrath v. Rust-Oleum*, plaintiffs alleged that a flammable oil finish spontaneously combusted, and filed a misbranded warning defect claim pursuant to the

FHSA. *McGrath*, No. 12-1719, 2013 WL 2896966, at *8. The label contained the phrase "WARNING! COMBUSTIBLE LIQUID AND VAPOR" and warned "DANGER: rags, steel wool or waste soaked WITH WATCO® TEAK OIL MAY SPONTANEOUSLY CATCH FIRE IF IMPROPERLY DISCARDED." *Id*. Judge Padova rejected this claim, finding that "spontaneous combustion" is not a "principal hazard," and accordingly that the product was label was not misbranded as it included the mandatory phrase "COMBUSTIBLE." *Id*.; *see also Pa. Gen. Ins. Co. v. Landis,* 96 F.Supp.2d 408, 416 (D.N.J.2000) (finding label that cautioned "EXTREMELY FLAMMABLE LIQUID AND VAPOR. VAPOR HARMFUL AND MAY CAUSE FLASH FIRE" met the FHSA "principal hazard" requirement by warning of flash fires); *see also Penwell v. Rust-Oleum Corp*, No. 06-C-337 S, 2006 WL 3792660, at *2 (W.D. Wis. Dec. 22, 2006) ("Spontaneous combustion is not a separate principal hazard…").

In *Pomerleu,* the Central District of California recently awarded summary judgment to Sherwin-Williams, finding that, while the product label at issue specifically contained spontaneous combustion warnings and precautionary instructions, the **FHSA did not require them** as a matter of law. *See* SUMF, at ¶¶ 48-50 (September 23, 2021 Order in *Pomerleau*).[2] The court went a step further, reasoning that the FHSA does not require **any** additional warnings "related to disposal of rags or other waste" because spontaneous combustion is not a defined principal hazard. *Id*.

The Thompson's label complies with the principal hazard requirements of the FHSA. Indeed, the circumstances in this case are nearly identical to those in *McGrath*, *Pomerleau*, and

---

2      Mr. Levine filed a nearly identical action against Rust-Oleum Corporation in 2021 in the Eastern District of Pennsylvania. *See* SUMF, at ¶¶ 43-47. When faced with similar preemption issues at an oral argument to address a summary judgment motion filed by Mr. Levine's client, Judge Smith suggested – "I think Mr. Levine…should just roll it up here because these arguments seem overwhelming." *Id.* Furthermore, Judge Smith noted – "the power of preemption…applies here with equal force…" *Id*. Mr. Levine subsequently withdrew the *Haas* litigation. *Id*. at ¶ 46.

*Haas* – Plaintiffs suggest, incorrectly, that the Thompson's label is defective because it fails to warn about "spontaneous combustion" and include instructions as to how to properly "dispose of and store application materials."  The label, however, lists "COMBUSTIBLE" in white font on a black label, prominently and conspicuously identifying the principal hazard exactly as is required by the FHSA, and specifically warning the Plaintiffs to "place rags...in a sealed, water-filled, metal container."  *See* SUMF, at ¶¶ 35-42.  Plaintiffs' claims fail as a matter of law because the FHSA only requires Sherwin-Williams to include the term "COMBUSTIBLE," and, as held in *Pomerleau*, the FHSA does not require any additional warnings as to waste disposal.

### G.      Implied Warranty Claims are Preempted and/or Improper in this Context

Plaintiffs cannot demonstrate that an implied warranty of merchantability existed between them and Sherwin-Williams under the Pennsylvania Commercial Code, and as discussed at length, the FHSA preempts any attempt to impose additional state law obligations on Sherwin-Williams as the manufacturer of the Thompson's product.  The "implied warranty of merchantability" as set forth under the Pennsylvania Commercial Code provides that goods sold in Pennsylvania must:

(1)     pass without objection in the trade under the contract description;
(2)     in the case of fungible goods, are of fair average quality within the description;
(3)     are fit for the ordinary purposes for which such goods are used;
(4)     run, within the variations permitted by the agreement, of even kind, quality and quantity within each unit and among all units involved;
(5)     are adequately contained, packaged, and labeled as the agreement may require; and
(6)     conform to the promises or affirmations of fact made on the container or label if any.

13 Pa.C.S.A. § 2314.  This statute effectively imposes state law warning obligations on Sherwin-Williams separate from those mandated by the FHSA, and this claim is preempted as matter of law.  Plaintiff cannot use a state statute as a backdoor attempt to show that the Thompson's product was improperly "contained, packaged, and labeled."  *Cf*. 15 U.S.C. § 1261 ("no State…may

establish or continue in effect a cautionary labeling requirement applicable to such substance or packaging…unless such cautionary labeling requirement is identical to [the FHSA].").

Furthermore, product defectiveness and merchantability are distinct concepts – "merchantability" only requires that a product has inherent soundness making it suitable for the purpose for which it is designed.  *See Phillips v. Cricket Lighters*, 883 A.2d 439, 442 (Pa. 2005). As long as a product can be used for its intended purpose and comports with the requirements of 13 Pa.C.S. § 2314, it is considered merchantable, even if it causes an injury in tort.  *Id.*

Whether or not the Thompson's product was defective, and thus caused the fire, is entirely separate from whether the product was "merchantable" as purportedly warranted by Sherwin-Williams.  Indeed, Scott Mains testified that he successfully stained the majority of his deck prior to the fire, and did not take issue with the quality or performance of the stain as applied.  *See* SUMF at ¶¶ 24-35.   To that end, the implied warranty claim amounts to little more than a backdoor attempt to impose additional warning obligations on Sherwin-Williams in a manner preempted by the FHSA, and Plaintiff has not plead or demonstrated any of the required elements, and thus summary judgment is warranted in favor of Sherwin-Williams as a matter of law.

## IV.  <u>CONCLUSION</u>

For the forgoing reasons, Sherwin-Williams respectfully requests that this Court enter summary judgment in its favor, as Plaintiffs' claims fail as a matter of law, and no dispute of material facts exists.

Dated: July 25, 2022                    Respectfully submitted,

                                        **GORDON REES**
                                        **SCULLY MANSUKHANI, LLP**

                                        By:      */s/ C. Tyler Havey*
                                        Ann Thornton Field (No. 52130)
                                        C. Tyler Havey (No. 80877)
                                        Eric C. Rosenberg (No. 317144)
                                        Three Logan Square
                                        1717 Arch Street, Suite 610
                                        Philadelphia, PA 19103
                                        Phone:         (215) 717-4002
                                        Emails:        afield@grsm.com
                                                       thavey@grsm.com
                                                       erosenberg@grsm.com
                                        *Counsel for Defendant The Sherwin-Williams*
                                        *Company, doing business as The Thompson's Company*

18